ODOM, Justice.
 

 The facts in this case are not disputed. Etsol D. Ashley purchased a Ford automobile from the Andress Motor Company, Inc., on January 20, 1938, the consideration for the sale being $941.82. He paid $249.-72 cash and for the balance of the purchase price executed 18 promissory notes, each for the sum of $38.45. To secure the payment of the notes, he executed a chattel mortgage on the automobile in favor of the Andress Motor Company, the vendor.
 

 The sale took place at Minden, in the Parish of Webster, where Ashley resided and where the Andress Motor Company had its domicile. The chattel mortgage was duly recorded in the Parish of Webster. The Andress Motor Company, the vendor of the car and the mortgagee, transferred the notes and the chattel mortgage to the Universal Credit Company.
 

 Ashley paid three of the notes. Finding that he was unable to carry out his contract, he transferred his equity in the car to W. A. Owens, who resided in the Parish of Claiborne. Lewis F. Holley, a judgment creditor of W. A. Owens, had the automobile seized under a writ of fieri facias. The car was advertised and sold under the writ. The Universal Credit Company, the holder and owner of the chattel mortgage above referred to, intervened, claiming the proceeds of the
 
 *378
 
 sale of the car. It alleged that it was the holder and owner of the chattel mortgage and the notes given by Ashley, the original purchaser of the car, that its privilege primed that of the seizing creditor, and that its debt should be paid first out of the proceeds of the sale.
 

 There was judgment in the district court in favor of the Universal Credit Company, the intervenor, and against W. A. Owens for the balance due on the notes held by the credit company, together with interest, recognizing the vendor’s lien, privilege, and chattel mortgage on the car, and ordering the credit company’s claim to be paid by preference over the claim of Holley, the seizing creditor.
 

 L. F. Holley, the seizing creditor, appealed to the Court of Appeal, Second Circuit. That court reversed the judgment of the lower court, rejected intervenor’s demands, dismissed its suit entirely, and ordered it to pay the costs of both courts.
 

 The intervenor applied to this court for writs, which were granted.
 

 Lewis F. Holley, the seizing creditor, attacked the chattel mortgage, alleging that it was invalid because it was not executed in accordance with Section 2, Act No. 198 of 1918, as amended by Act No. 178 of 1936. That section of the act provides that every chattel mortgage shall be in writing, and that, “In order to affect third persons without notice, both within the Parish where recorded and outside of the Parish where recorded, but within the State of Louisiana, said instrument must be passed by notarial act, or by private act duly acknowledged by one of the parties, thereto, or by a subscribing witness thereto, before a Notary Public, and the original or a certified copy thereof shall be recorded in the office of the Recorder of Mortgages in the Parish where the Act of mortgage was executed, and also at the domicile of the mortgagor”.
 

 The chattel mortgage in this case was not by notarial act., It was a private act, and counsel for the seizing creditor contend that the act was not acknowledged before a notary public by one of the parties thereto or by a subscribing witness. Neither the trial court nor the Court of Appeal found any merit in this attack. A certified copy of the chattel mortgage is in the record. It shows that the act was signed by Etsol D. Ashley, the purchaser of the car, and by the Andress Motor Company, the vendor, represented by H. C. Andress, and witnessed by Blanche E. Deloney and O. S. Adkins. Attached to the mortgage, and made a part thereof, is a “Certificate of Acknowledgment”, showing that Blanche E. Deloney, one of the witnesses, appeared before a' notary public on January 20, 1938, and declared that she signed the act as a witness and that the act was signed by all of the parties in her presence. Ashley, the mortgagor, testified that, when he signed the act, Miss Deloney was not present. But she, as well as H. C. Andress, who represented the original vendor of the car, testified that she was present; and the district court, as well as the Court of Appeal, held that, as a matter of fact, she was present. Our reading of the testimony
 
 *379
 
 convinces us that she was present and saw the parties sign. Her acknowledgment before a notary that she signed the instrument as a witness and her declaration that she saw the other parties thereto sign are sufficient compliance with the act to make the chattel mortgage valid as to form.
 

 The second point raised by Lewis F. Holley, the seizing creditor, is that the Universal Credit Company, which acquired the chattel mortgage and .the notes from the Andress Motor Company, the original mortgagee, lost its privilege on the car by failing to have the chattel mortgage recorded in the Parish of Claiborne, where W. A. Owens, who purchased the car from Ashley, resided. According to Section 2, Act No. 178 of 1936, a chattel mortgage, in order to' affect third persons without notice, must be recorded in the office of the recorder of mortgages in the parish where the act of mortgage is executed and also at the domicile of the mortgagor. If both the mortgagor and the mortgagee reside in the parish where the mortgage is executed, the mortgage, in order to affect third persons without notice, need not be recorded elsewhere. But, if the mortgagor has his domicile in a parish other than the one where the mortgage is executed, the mortgage, in order to affect third persons without notice, must be recorded in two parishes — the parish in which the mortgage is executed and the parish where the mortgagor has his domicile.
 

 In this case, Ashley, the mortgagor, had his domicile in the Parish of Webster, where the mortgage was executed and recorded in the office of the recorder of mortgages. Therefore, in so far as Ashley, the mortgagor, and the Andress Motor Company, the mortgagee, were concerned, it was necessary to record the mortgage only in the Parish' of Webster. But the contention of the seizing creditor is that, when Owens, a resident of the Parish of Claiborne, purchased Ashley’s equity in the car and assumed the payment of the mortgage notes and agreed to carry out all of the provisions of the chattel mortgage, it then became necessary for the Universal Credit Company, the transferee and the owner of the chattel mortgage and the notes, to have the chattel mortgage recorded in the Parish of Claiborne, where Owens resided. His contention is that, when Owens, who resided in the Parish of Claiborne, took over Ashley’s contract, there was, in effect, another, or new, mortgage, so that it was necessary that the mortgage be recorded in the Parish of Claiborne.
 

 The contract between Owens and Ashley, by which Owens took over Ashley’s contract, is in writing, and the Universal Credit Company was a party thereto. This contract is styled “Transfer of Equity”. It recites that Etsol D. Ashley, party of the first part, having purchased a Ford car from the Andress Motor Company, Inc., the original seller, which company transferred its chattel mortgage to the Universal Credit Company, party of the second part, “hereby, in consideration of
 
 *380
 
 $1.00 transfers his equity in the above property to W. A. Owens (Transferee) party of the third part.”
 

 The document further recites:
 

 “The party of the third part [Owens], in consideration of said.transfer, agreed to by the party of the second part [Universal Credit Company], agrees to assume all obligations and abide by all covenants embodied in the aforesaid document [the chattel mortgage], the terms of which are clearly understood. * * , *
 

 “Party of the first part [Ashley] understands that he is not released from any obligation whatsoever under the aforementioned document, and in the event that the party of the third part [Owens] fails to keep up payment of the installments as they mature, the party of the first part [Ashley] is bound to make payments immediately as called for by the contract.”
 

 The Court of Appeal, in the course of its opinion, said with reference to the above instrument: “When the above instrument was executed, Owens became the mortgagor just the same as if a new mortgage had been drawn and executed by Owens to the seller or holder of the notes, and the instrument takes the place of a new mortgage and, in our opinion, is governed by the provisions of Section 2 of Act No. 178 of 1936 and, therefore, to have been effective against third persons without notice, it was necessary that it be recorded in Webster Parish, Louisiana, where the sale took place and in Claiborne Parish, Louisiana, the domicile of the purchaser and mortgagor. This was not done.” 7 So. 2d 46.
 

 If it be true, as the court held, that the legal effect of the contract entered into by and between Ashley and Owens, as evidenced by the written instrument from which we have quoted above, to which contract the finance company made itself a party, was to bring into existence a new mortgage with Owens as the mortgagor, then its holding that, in order to affect third persons without notice, the mortgage should have been recorded in Claiborne Parish, where Owens resided, is correct. But the court’s holding that a new mortgage arose or came into existence as a result of that contract is erroneous.
 

 There was no new mortgage. Clearly all the parties to the contract intended that the original mortgage, to which reference was especially made, should remain in full force and effect. They did not intend to cancel it and to substitute a new one to take its place. On the contrary, they intended to keep it in existence. The language used by them shows that. Owens, who purchased Ashley’s, equity in the car, knowing, according to the recitals of the contract, that the automobile- was then encumbered by chattel mortgage, agreed to “assume all obligations and abide by all covenants embodied in the aforesaid document [the chattel mortgage], the terms of which are clearly understood”.
 

 Furthermore, Ashley, the original mortgagor, was not released from the obliga
 
 *381
 
 tions which the mortgage imposed upon him. The contract so states specifically. It recites that Ashley, the party of the first part, "understands that he is not released from any obligation whatsoever under the aforementioned document, and in the event that the party of the third part [Owens] fails to keep up payment of the installments as they mature, the party of the first part [Ashley] is bound to make payments immediately called for by the contract [the mortgage]”.
 

 The original notes executed by Ashley were not surrendered and cancelled, nor was Ashley released from the obligation to pay them. On the contrary, according to the precise language of the agreement, he remained bound to pay them if Owens defaulted. Owens assumed the payment of the notes and obligated himself to “abide by all covenants embodied” in the mortgage, the terms of which he clearly understood. Owens, who bound and obligated himself to pay the notes, did not execute new notes and grant a new mortgage on the car. He obligated himself to pay the notes executed by Ashley and to abide by the terms, conditions, and covenants embodied within the chattel mortgage granted by Ashley. In sum, he agreed to carry out Ashley’s contract. But he was not substituted for Ashley as debtor and mortgagor. Ashley was not released, but remained bound.
 

 The Court of Appeal held, in effect, that there was a novation of the debt and mortgage. We do not think there was. According to the Revised Civil Code, Article 2185, “Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place”. Article 2187 of the Code reads as follows: “The pre-existent obligation must be extinguished, otherwise there is no novation; if it be only modified in some parts, and any stipulation of the original obligation be suffered to remain, it is no novation.”
 

 According to the contract which we are here considering, there was no extinguishment of an existing obligation, nor was there a substitution of a new one in its place. By express agreement the original obligation was to remain in full force and effect. The original obligor, Ashley, remained bound. The obligee remained the same. Owens made himself a party to the contract. He became the owner of the car, but he did not become a mortgagor. He did not grant a new mortgage.
 

 It is argued by counsel for the seizing creditor, Holley, that, as a result of the finance company’s joining in the contract and making itself a party thereto, it has estopped itself from urging that the original chattel mortgage is still in force and effect. They cite numerous common-law authorities in support of their contention. Those authorities have no application here. The effects of chattel mortgages given in this state, and the rights, duties, and obligations which arise from the execution of them, are purely statutory.
 

 The purpose of the finance company in making itself a party to the contract by which Ashley transferred his equity in the. car to Owens was to give its consent to the removal of the car from the parish where
 
 *382
 
 the mortgage was executed. That was necessary, because Section 5, Act No. 198 of 1918, as amended by Act No. 178 of 1936, provides that “The mortgagor shall not move the property mortgaged from the parish where said mortgage is given with-N out the written consent of the mortgagee”.
 

 Counsel for the seizing creditor cite numerous decisions of this court and of the courts of appeal of this state, which hold that, when a chattel is removed from the parish where the chattel mortgage was executed; the lien resulting from the mortgage is lost. But those cases have no application here, for the reason that the chattel mortgage law has been amended since they were decided so as to provide that, in order to affect .third persons without notice within any parish of the State of Louisiana, all that is necessary is that the mortgage be recorded in the parish where it is executed if the mortgagor has his residence in that parish, and that, if he resides elsewhere, it be recorded also in the parish of his residence. In this case, Ashley, the mortgagor, resided in the parish where the mortgage was executed. And, since the mortgage granted by him continued in full force and effect, it was not necessary that it be recorded in the Parish of Claiborne, where Owens resided.
 

 For the reasons assigned, the judgment of the Court of Appeal is reversed, and the judgment of the district court is reinstated and affirmed; the seizing creditor to pay all costs.
 

 O’NIELL, C. J., does not take part.